IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VOLKSWAGEN GROUP OF AMERICA, INC., <br><br> Plaintiff, <br> v. <br><br> AUKUR-US, *et al.*, <br><br> Defendants, | No. 20-cv-03128 <br><br> Judge John F. Kness |

## MEMORANDUM OPINION AND ORDER

Before the Court is the motion (Dkt. 95) of Intervenor Beijing Chinasigns Information Co., Ltd. ("BCI") to amend the default final judgment previously entered in this case. Also pending is the related motion (Dkt. 102) of Plaintiff Volkswagen Group of America, Inc. ("VW") to exclude the proffered expert opinion of Xiaoqi Guo. BCI asks the Court to determine the rightful owner of $144,747.23 ("the Funds") that at one time resided in a PayPal account (the "PayPal Account")—until they were turned over to VW in partial satisfaction of the final judgment order. BCI asserts that it, individually and as trustee, is the rightful owner of $141,080.41 of the Funds. BCI contends that "justice" thus requires amendment of the final judgment "to limit [VW's] recovery from the PayPal Account to $3,666.82"—the only amount of the Funds that belonged to two defaulted defendants ("the Defendant Stores"). (Dkt. 96 at 1–2, 6; Dkt. 97 ¶ 10.)

For the reasons that follow, the Court holds that BCI has failed to meet its substantial burden of establishing "extraordinary circumstances" to justify amending the final default judgment order. BCI presents insufficient evidence to establish its ownership interest in, or that it was serving as trustee of, any portion of the Funds. But even if BCI could establish an interest in the Funds, PayPal's user agreement anticipates BCI's current predicament—meaning that there is nothing extraordinary about BCI's circumstances that could warrant a modification to the final judgment order that ended this case. Accordingly, the Court denies BCI's Motion to Amend Final Judgment and dismisses as moot VW's motion to exclude the opinion of Xiaoqi Guo.

**I.  BACKGROUND**

This case (one of a common species of trademark-counterfeiting cases known colloquially as "Schedule A" actions) concerns allegations that Defendants sold and offered for sale products that used infringing and counterfeit versions of VW's trademarks. (*E.g.*, Dkt. 1.) On May 29, 2020, the Court granted VW a temporary restraining order, and on June 25, 2020, the Court entered a preliminary injunction. (Dkt. 30; Dkt. 40.) An asset restraint in the preliminary injunction froze the PayPal Account that the Defendant Stores used to collect proceeds from the sale of counterfeit VW products. (Dkt. 40 ¶ 5.) On September 1, 2020, the Court entered a final default judgment order against the Defendant Stores in the amount of $200,000 in statutory damages. (Dkt. 66.) PayPal transferred the Funds to the trust account of VW's counsel on October 30, 2020 in partial satisfaction of the judgment. (Dkt. 100 at 3.)

2

On March 26, 2021, the Court granted BCI's motion to intervene. (Dkt. 70; Dkt. 88.) After engaging in limited discovery, BCI moved to amend the final judgment under Rule 60(b)(6) of the Federal Rules of Civil Procedure. (Dkt. 95.) In its reply, BCI included an opinion of Xiaoqi Guo regarding the legality under Chinese law of BCI's role as transfer agent. (Dkt. 101, Ex 1.) VW then moved to exclude that opinion.[1] (Dkt. 102.)

    *i.    The PayPal Account*

BCI alleges that a Chinese company named Shanghai Scientific Instruments and Materials, Co., Ltd. ("SSIM") owns the PayPal Account, which all parties agree is a PayPal business account. (Dkt. 97 ¶¶ 5–6.) BCI provided a screen shot of account information, absent an account number, for a PayPal account registered on February 22, 2008 by lyn@chinasigns.cn. (Dkt. 96 at 2.) BCI's information lists Beijing ChinaSigns Information Co., Ltd. as the business associated with that account. (*Id.*)

VW provides different information for the PayPal Account. According to VW, the account was created on Oct 11, 2008, with an account number ending in 0633. (Dkt. 100-1, Ex. 3.) VW's account information lists first name "雁行" and last name "刘" as the user, and "北京标广网络科技有限公司" as the business, associated with the

---

[1] VW argued in its response brief that the alleged transfer agent scheme is illegal under Chinese Law. (Dkt. 100 at 9-10.) In its reply, BCI attached an expert opinion of Xiaoqi Guo regarding the legality under Chinese law of BCI's role as transfer agent. (Dkt. 101, Ex. 1.) Whether the alleged scheme is legal under Chinese law is inconsequential to the Court's decision, for the reasons provided in this opinion. Accordingly, the Court does not address that argument, nor does it reach the issue of the propriety of attaching the expert opinion to BCI's reply.

3

account.[2] (*Id.*) VW's information also shows that the PayPal Account is registered primarily to lyn@chinasigns.cn with the email addresses sicebay10@yahoo.com and sicebay04@yahoo.com (the email addresses used to register the Defendant Stores' eBay accounts) confirmed and active on the account. (*Id.*) Five additional emails are confirmed and active on the account, but only one user and one business are associated with the PayPal Account. (*Id.*)

BCI alleges that the $144,747.23 divides into three parts: $93,103.58 in reserve money[3]; a $1,447.15 balance as of June 4, 2020; and $50,196.50 in proceeds received between June 5 and June 9, 2020 ($93,103.58 + $1,447.15 + $50,196.50 = $144,747.23). (Dkt. 97 ¶ 20.) BCI suggests only $3,666.82 of the Funds belongs to the Defendant Stores. (*Id.* ¶ 24.) BCI contends it is entitled to the remaining Funds individually and as trustee on behalf of six other businesses (*Id.* ¶¶ 10–12.)

    ii.    *BCI's Alleged Role as Trustee of the Funds*

BCI alleges it serves as a transfer agent for Chinese businesses who conduct business in, and receive revenue from, jurisdictions outside of China. (Dkt. 96 at 1.) According to BCI, China limits the number of companies able to receive money from overseas by issuing special foreign exchange permits. (*Id.*; Dkt. 97 ¶ 4.) BCI's Chief Executive Officer Liu Yanhang declares, "BCI does not hold such a permit." (*Id.*) BCI contends it operates the PayPal Account as a trustee for its client, including the

---

[2] A Google Translate search translates these terms to "Yànháng Liú" and "Beijing Biaoguang Network Technology Co., Ltd.," respectively.
[3] *See Infra, Section I.iii,* for explanation of PayPal account reserves.

Defendant Stores. (Dkt. 96 at 1.) BCI suggests the shared PayPal Account is a legal workaround for Chinese restrictions on foreign exchange permits. (Dkt. 97 ¶¶ 5–9.)

BCI, on behalf of itself and others, uses the PayPal Account owned by SSIM to receive funds from online retail sales transactions. (*Id.* ¶ 8.) BCI then places orders with SSIM for such funds held in the SSIM PayPal Account, and SSIM will execute the order, deduct its own costs, and remit the difference to BCI. (*Id.* ¶ 6.) To explain this arrangement, CEO Liu Yanhang provides multiple exhibits detailing various banking transactions; however, none of those documents shows a PayPal account ending in x0633. (Dkt. 97, Ex. 1–11.) BCI submits six nearly identical declarations alleging the PayPal Account contained funds belonging to BCI, the Defendant Stores, and six other Chinese businesses. (Dkt. 96, Ex. 1–6.) None of the declarations refers to a trust or SSIM. (*Id.*)

  *iii.* *PayPal User Agreement*

PayPal authorizes two types of accounts: personal accounts and business accounts. (Dkt. 100-7 at 431.) PayPal requires a single account owner/user and that the PayPal account holder "be the beneficial owner of the PayPal account" and must "conduct business only on behalf of themselves." (*Id.* at 432.) Granting access to any third party to one's PayPal account in any way does not relieve account holders of any of their responsibilities under the user agreement. (*Id.*)

PayPal account users agree to comply with all the terms and conditions in the PayPal user agreement, including the PayPal Acceptable Use Policy. (*Id.* at 430.) PayPal account holders acknowledge and agree to pay as damages to PayPal $2,500

USD per violation of the Acceptable Use Policy. (*Id.* at 462.) Using PayPal services for activities that relate to transactions involving items that infringe or violate any trademark under the laws of any jurisdiction is a violation of the Acceptable Use Policy. (*Id.* at 460.) Users agree that, if PayPal believes that the user has engaged in any restricted activities or violated the Acceptable Use Policy, PayPal may, *inter alia*, hold the user's PayPal balance if reasonably needed to protect against the risk of liability to a third party. (*Id.* at 462.)

PayPal contemplates the need to apply a hold, reserve, or limitation on user accounts to comply with court orders. (*Id.* at 466.) In addition, PayPal may place a reserve on business accounts if it believes there may be a high level of risk associated with the owner, the owner's business account, the owner's business model, or the owner's transactions. (*Id.* at 465.) Reserves are intended to protect against the risk of transactions made by the owner being reversed or invalidated or any other risk related to the business account or use of the PayPal services. (*Id.*) As of June 4, 2020, PayPal required the PayPal Account to maintain such cash reserves of $93,103.58, comprised of the $50,000 required reserve amount and $43,103.58 representing 10% of the total revenue over the last 45 days. (Dkt. 97, Ex. 9.) BCI alleges this is because it sells personal protective equipment. (Dkt. 97 ¶ 13.)

PayPal applies country specific terms to accounts registered in Mainland China. (Dkt. 100-1, Ex. 7 at 479.) Those terms contemplate the use of licensed foreign-exchange service providers and potential disputes between account holders and such service providers. (*Id.*)

## II. LEGAL STANDARD

Rule 60(b)(6) of the Federal Rules of Civil Procedure permits the Court to relieve a party from a judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60. Rule 60(b) vests wide discretion in courts and requires the movant to establish "extraordinary circumstances" justifying the relief sought. *Choice Hotels Int'l, Inc. v. Grover*, 792 F.3d 753, 754 (7th Cir. 2015). Rule 60(b)(6) is fundamentally equitable in nature and requires the Court to examine all of the circumstances, bearing in mind the need for the party invoking the rule to demonstrate why extraordinary circumstances justify relief. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 851 (1988). Extraordinary circumstances will exist only rarely. *Ramirez v. United States*, 799 F.3d 845, 851 (7th Cir. 2015). In determining whether extraordinary circumstances are present, a court "may consider a wide range of factors. These may include, in an appropriate case, 'the risk of injustice to the parties' and 'the risk of undermining the public's confidence in the judicial process.' " *Buck v. Davis*, 137 S. Ct. 759, 778 (2017) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988)). Finally, a motion under Rule 60(b)(6) must be made within a "reasonable time." Fed. R. Civ. P. 60(c).

## III. DISCUSSION

As explained below, BCI has failed to meet its substantial burden of establishing "extraordinary circumstances" justifying amendment of the final default judgment order. It has not presented sufficient evidence establishing its ownership interest in, or that it was serving as trustee of, any of the Funds. Even if it could

7

establish its interest, there is nothing extraordinary about circumstances anticipated in PayPal's terms of use.

      **A.    BCI Has Not Shown a Property Interest in the PayPal Account Funds.**

BCI's theory of relief hinges on its interest in the PayPal Account Funds as owner and as trustee. As evidence of this interest, BCI offers seven declarations, one from its CEO and six from the other store owners. But the evidence provided by BCI does little to support its contention that it has an interest in the PayPal Account Funds.

   To begin, the PayPal Account is neither a trust account nor a joint account; it is a PayPal business account. According to BCI, the PayPal account has one owner, SSIM. (Dkt. 97 ¶¶ 5-6.) BCI explains in their reply that SSIM holds a permit from the Chinese government to receive funds from overseas transactions on behalf of Chinese businesses and serves as somewhat of a middleman between foreign purchasers and BCI. (Dkt. 101 at 6.) BCI does not elaborate further on SSIM's involvement in the scheme. (Dkt. 97 ¶¶ 5–8.) BCI's claim that it has an interest individually and as trustee in the Funds in SSIM's PayPal Account fails because SSIM, not BCI, "must be the beneficial owner of the PayPal account" and must "conduct business only on behalf of themselves." (Dkt. 100-1, Ex. 7 at 431.)

     BCI also provides conflicting and incomplete information to show its interest in the Funds. VW provided account information showing the PayPal Account number ends in x0633 and was created on Oct 11, 2008. (Dkt. 100, Ex. 3.) For its part, BCI provides different PayPal account information—only the name and email match the

information provided by VW. A web translation of BCI's account information shows the owner of that account is Yànháng Liú, the same, or at least a remarkably similar, name as BCI's CEO, Liu Yanhang. That account information also lists the same primary email, lyn@chinasigns.cn, as the account information provided by BCI. (Dkt. 100-1, Ex. 3.) The similarities between BCI and VW's account information end there.

BCI's information appears to be from a different PayPal account registered on February 22, 2008: eight months before the creation of the PayPal Account. Beijing ChinaSigns Information Co., Ltd. is the business associated with that earlier-registered account, but "北京标广网络科技有限公司" (web-translated to "Beijing Biaoguang Network Technology Co., Ltd.") is the business associated with the PayPal Account (per the information provided by VW). BCI's account information does not show an account number. In fact, none of the evidence offered by BCI reflects the PayPal Account number x0633, or any PayPal account number at all. SSIM, the alleged owner of the account, is reflected on only one document before the court: a SWIFT receipt showing Citibank N.A. as the sender, Bank of Communications Shanghai as the receiver, and SSIM as a beneficiary. (Dkt. 97, Ex 2.) This exhibit does nothing to establish SSIM's role in BCI's alleged scheme. Given this incompleteness and inconsistency, BCI's theory of ownership lacks evidentiary support and credibility.

BCI suggests it operates the PayPal Account owned by SSIM as a trustee for numerous companies, including the six other stores and the Defendant Stores. (Dkt. 96 at 1.) BCI argues it has a cognizable property interest in the Funds as trustee

9

because the Funds "belong to the trust itself." (Dkt. 96 at 7.) But because there is no evidence that a trust existed, the trustee interest theory likewise lacks support and credibility. Of the six nearly identical declarations BCI offers to support its position, not one mentions the account owner SSIM or the existence of a trust. (Dkt. 96, Ex. 1–6.) To explain this arrangement, CEO Liu Yanhang provides multiple exhibits detailing various banking transactions; none of those documents, however, reflects a PayPal Account ending in x0633 or mentions a trust or trust agreement. (Dkt. 97, Ex. 1–11.) BCI neglects to submit a trust agreement or any other documentation even remotely suggesting the existence of trust or trust account. This omission is perhaps unsurprising considering that PayPal does not authorize trust or joint accounts, or the use of its business accounts as trust accounts. (Dkt. 100-1, Ex. 7 at 431.) BCI's unsupported trustee interest claim, therefore, lacks credibility.

BCI's cited cases are unavailing given that the PayPal Account is not a trust account and BCI does not have (or, at least, has not shown) a duty to protect the assets of the PayPal Account owned by SSIM. *See, e.g., Citibank, N.A. v. Park-Kenilworth Indus., Inc.,* 109 B.R. 321 (N.D. Ill. 1989) (recognizing property interest in the subject matter of the action for trustee, who had a duty to protect the assets of the estate, where plaintiffs in the action sought to recover a valuable asset of the bankruptcy estate). Although the Court recognized BCI sufficiently pleaded a legitimate property interest for purposes of the motion to intervene, BCI has failed to establish that property interest here.

**B.     Rule 60(b)(6) Does Not Support Turnover of the PayPal Account.**

To obtain relief under Rule 60(b), a movant must "establish that 'extraordinary circumstances' justify upsetting a final decision." *Choice Hotels*, 792 F.3d at 754 (cleaned up). BCI does not contend that these circumstances are extraordinary; instead, BCI argues only that "justice requires amendment of the Final Judgment Order to limit the recovery from the PayPal Account to $3,666.82." (Dkt. 96 at 6.) In the Court's view, however, there is nothing extraordinary about BCI's predicament, and "justice" (however defined) does not require an amendment of the final default judgment order.

PayPal account users agree to comply with all the terms and conditions in the PayPal user agreement, including the PayPal Acceptable Use Policy. (Dkt. 100-1 ¶ 8, Ex. 7 at 430.) PayPal account holders "must be the beneficial owner of the PayPal account" and must "conduct business only on behalf of themselves." (*Id.* at 432.) BCI admits SSIM is the PayPal Account holder and therefore the beneficial owner of the PayPal Account. BCI also admits that it, and not SSIM, uses the PayPal Account to conduct business on behalf of eight different companies in violation of the PayPal terms of use. Despite the PayPal Account being a business account, BCI purports to utilize it as some sort of trust or joint account where multiple third parties have permission to access the account in some way. (Dkt. 100-1, Ex. 3.) Granting access to the defendant stores does not relieve BCI (or SSIM) of any of its responsibilities under the user agreement (Dkt. 100-1, Ex. 7 at 431.) BCI, SSIM, and the Defendant Stores all violated the PayPal Acceptable Use Policy by using

11

PayPal services for activities that relate to transactions involving items that infringed VW's trademarks. (*Id.* at 460.) SSIM, the PayPal Account holder, is liable to PayPal for damages of $2,500 USD per such violation. (*Id.* at 462.)

Users agree that violations of the Acceptable Use Policy may result in a hold of the user's PayPal balance if reasonably needed to protect against the risk of liability to a third party. (*Id.* at 462.) Moreover, the Court ordered the PayPal Account frozen, and PayPal complied in accordance with its warnings in the user agreement. (*Id.* at 466.) BCI acknowledges that PayPal required it to maintain reserves indicating PayPal believed there was a high level of risk associated with SSIM and/or SSIM's business account, business model, or transactions. (*Id.* at 465.) Those reserves—$93,103.58—are intended to protect against risks related to the business account or use of the PayPal services. (*Id.*) Those risks include the possibility that a court could order the balance of the account be used to satisfy a judgment. PayPal's user agreement specifically contemplates disputes between holders of PayPal accounts registered in China and licensed foreign-exchange service providers. (*Id.* at 479.)

SSIM assented to the PayPal user agreement, then violated that agreement by letting the Defendant Stores use that account for transactions that infringed VW's trademarks, resulting in the PayPal Account Funds being frozen and turned over to VW by a court order. PayPal implemented a reserve on the PayPal account because it believed there was risk related to the account. PayPal also warned of potential disputes with foreign-exchange service providers. Even assuming BCI has some

interest as an owner or trustee of the Funds, this is not a rare instance of extraordinary circumstances requiring relief from the final default judgment order. *Ramirez*, 799 F.3d at 851. Rather, these are ordinary circumstances set forth in PayPal's standard user agreement. BCI has thus failed to meet its burden of establishing extraordinary circumstances warranting relief under Rule 60(b)(6). *Liljeberg*, 486 U.S. at 851.

### IV. CONCLUSION

BCI's Motion to Amend Final Judgment (Dkt. 95) is denied. VW's Motion to Exclude Opinion of Xiaoqi Guo (Dkt. 102) is dismissed as moot.

SO ORDERED in No. 20-cv-03128.

Date: January 3, 2023

JOHN F. KNESS
United States District Judge